**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**MICHAEL THAXTON
on behalf of himself and all others similarly situated,**

      **Plaintiff,**

**v.**                                   **Case No. _____**

**GEICO ADVANTAGE INSURANCE COMPANY,
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO GENERAL INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO CASUALTY COMPANY, GEICO
CHOICE INSURANCE COMPANY, GEICO
COUNTY MUTUAL, and GEICO SECURE
INSURANCE COMPANY,**

      **Defendants.**

## CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY, COMMON LAW, AND CONTRACTUAL DUTIES

      Plaintiff Michael Thaxton, for himself and on behalf of the class defined herein, through his counsel, for his Complaint, states generally as follows:

      1.      Defendants GEICO Advantage Insurance Company, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Choice Insurance Company, GEICO County Mutual, and GEICO Secure Insurance Company (hereinafter referred to as "Defendants") worked together as a joint venture to sell automobile policies to New Mexico residents, including Plaintiff Michael Thaxton. They are therefor jointly and severally liable for the acts and resulting damages contained herein.

      2.      Defendants failed to act honestly and in good faith when it solicited and sold superfluous and illusory minimal limits underinsured motorist coverage to their insureds (in whole

1

or in part) in violation of New Mexico law, and/or they denied claims for the benefits of that coverage. Basically, there is no such thing as "minimum limits underinsured motorist coverage". Nonetheless, Defendants sold such coverage to Plaintiff Michael Thaxton and other class members.

3.      This conduct violates the New Mexico Unfair Practices Act, N.M.S.A.1978, § §57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law.

4.      Mr. Thaxton brings this action on his own behalf, and on behalf of the many insured around the state who have been deceived by Defendants' practices.

## I.   JURISDICTION AND VENUE:

5.      Mr. Thaxton is now and was at all times material to this Complaint a resident of Bernalillo County.

6.      At all times material, Mr. Thaxton was covered by a policy of automotive insurance issued by Defendants, specifically Defendant GEICO Advantage Insurance Company, in the State of New Mexico, which provided him with underinsured coverage for injuries and damages described herein.

7.      Defendants are the real parties in interest and proper parties to this action.

8.      The acts complained of herein occurred in New Mexico.

9.      This action is proper in this Court pursuant to the Class Action Fairness Act of 2005.

10.     Jurisdiction and venue are proper in this Court.

2

## II.  GENERAL ALLEGATIONS COMMON TO
## ALL COUNTS OF THIS COMPLAINT:

### Mr. Thaxton is Injured in a Car Crash with an Underinsured Motorist

11.     On August 26, 2017, Mr. Thaxton sustained bodily injuries and other damages arising from an automobile collision that occurred in Rio Rancho, New Mexico; Mr. Thaxton was not at fault for the crash.

12.     On August 26, 2017, Mr. Thaxton traveled southbound on Unser Boulevard approaching Calicut Road in Rio Rancho, New Mexico.

13.     Mr. Thaxton was driving behind Trinidad Atencio, who was traveling in the same direction.

14.     Suddenly, without warning or signal, Trinidad Atencio veered to the right shoulder and attempted a U-turn directly in front of Mr. Thaxton.

15.     Mr. Thaxton was given no opportunity to avoid the accident and violently collided head on with the Ms. Atencio's vehicle at 55 miles per hour.

16.     The police report notes Ms. Atencio's inattention as the cause of the subject accident and Ms. Atencio was cited for careless driving.

17.     As a result of the impact, Mr. Thaxton suffered serious bodily injuries and other damages, including but not limited to, a broken wrist and sternum.

18.     At the time of the collision, Mr. Thaxton was abiding by the traffic laws of the State of New Mexico and the City of Rio Rancho.

19.     At the time of the occurrence, Mr. Thaxton was insured by Defendants with Policy No. 4478-64-53-61.

3

20.     Ms. Atencio was an underinsured motorist at the time of the collision, pursuant to the terms of the Defendants' insurance policy of which Mr. Thaxton was an insured, and also under New Mexico law.

21.     Mr. Thaxton received the full extent of liability coverage carried by Ms. Atencio, $25,000.00.

22.     Prior to the collision at issue, Mr. Thaxton had properly paid a premium for automobile coverage under Defendants' auto insurance policy and had a reasonable expectation that he carried underinsured motorist coverage of $25,000.00 each person and $50,000.00 each accident.

23.     At the time of the collision, Mr. Thaxton was under the belief and had a reasonable expectation that he was entitled to underinsured benefits pursuant to the above referenced policy issued by Defendants.

## Defendants Deceptively Solicited and Sold Superfluous and Illusory Underinsured Coverage to Mr. Thaxton

24.     Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

25.     Defendants have written automobile insurance to other similarly situated New Mexico residents.

26.     In a 2010 case entitled *Progressive v. Weed Warrior*, the New Mexico Supreme Court established that underinsured coverage is superfluous when the tortfeasor and the injured driver both carry the statutory minimum of liability and underinsured coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10. 149 N.M. 157, 161, 245 P.3d 1209, 1213.

4

27.     At the time of purchasing automobile insurance, Mr. Thaxton owned one vehicle.

28.     Defendants' website provided to Mr. Thaxton that he must be insured for the state mandated minimum automobile bodily injury insurance coverage of $25,000.00 per person and $50,000.00 per accident, and consequently Mr. Thaxton selected underinsured motorist coverage in the amount of $25,000.00 each person and $50,000.00 per accident.

29.     Defendants misrepresented to Mr. Thaxton that he would benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. Defendants' misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Mr. Thaxton into purchasing underinsured coverage.

30.     Based on the information provided by Defendants, Mr. Thaxton agreed to pay a six-month premium for the State of New Mexico mandated minimum automobile bodily injury and uninsured/underinsured motorist coverage.

31.     Following the representations and misrepresentations alleged, Defendants issued to Mr. Thaxton a GEICO Advantage Insurance Company automobile insurance policy with corresponding endorsements ("policy").

32.     In violation of New Mexico law, the policy failed to state that underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving a minimally insured driver.

33.     Under New Mexico law, Defendants had a duty to act fairly, honestly, and in good faith when dealing with Mr. Thaxton. Defendants failed to do so when they failed to fully inform Mr. Thaxton of illusory underinsured coverage with a disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendants breached that duty.

5

## Insurance Investigation and Claims

34.    Following the motor vehicle collision, Mr. Thaxton promptly reported the occurrence to Defendants by and through its claims representatives.

35.    Defendants opened a claim, assigned claim number 0588527130101019, and assigned the adjustment of the matter to its adjuster Nicole Scott.

36.    The GEICO Advantage Insurance Company policy insuring Mr. Thaxton shows liability coverage on one vehicle in the amount of $25,000 each person and $50,000 per accident, per vehicle. *See* **Exhibit 1**, Policy No. 4478-64-53-61, Declarations Page.

37.    The GEICO Advantage Insurance Company insuring Plaintiff shows underinsured coverage on one vehicle in the amount of $25,000 per person and $50,000 per occurrence, per vehicle. *Id.*

38.    Defendants did not alert Mr. Thaxton, nor did Defendants make clear to the ordinary and similarly situated insured, the fact that the New Mexico offset law drastically and materially diminished payment of benefits arising from a covered occurrence under the policy. Specifically, there is virtually no possible underinsured minimum limits claim available to Mr. Thaxton or other similarly situated members of the class.

39.    Mr. Thaxton, through counsel, demanded Defendants provide him with underinsured benefits that the Defendants solicited and for which Mr. Thaxton paid a premium and Defendants denied Mr. Thaxton's claim for underinsured benefits under the policy. *See* **Exhibit 2,** November 15, 2017 correspondence from Defendants denying UIM coverage.

40.    Mr. Thaxton had a reasonable expectation that he would benefit from insurance premiums for which he paid. In fact, under his policy, there was virtually no underinsured motorist benefits.

6

41.    Defendants, in violation of the New Mexico Unfair Practices Act, N.M.S.A.1978, § 57–12–1 *et seq.* ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA"), and New Mexico common law, failed to offer its insureds sufficient information and knowledge regarding the superfluous, illusory, and deceptive coverage.

42.    Pursuant to New Mexico law, Defendants failed to inform Mr. Thaxton and other insureds about premium costs corresponding to the available levels of coverage and failed to offer their insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether.

43.    In violation of New Mexico law, Defendants failed to fully inform Mr. Thaxton and other insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, will result in a payment of premium for which no payment of benefits will occur and therefore violated Mr. Thaxton's and other insureds' reasonable expectations of benefiting from underinsured coverage.

44.    Pursuant to New Mexico law, the underinsured application, coverage, and the corresponding policy language must not be so complex such that a reasonable person would be unable to understand its full impact when he or she reads it. *See King v. Travelers Ins. Co.,* 1973-NMSC-013, 84 N.M. 550, 556, 505 P.2d 1226, 1232 and *Romero v. Dairyland Ins. Co.,* 1990-NMSC-111, 111 N.M. 154, 159, 803 P.2d 243, 248.

45.    Because Defendants failed to fully inform Mr. Thaxton of the New Mexico offset law or that New Mexico is a "difference state" during the application and policy underwriting stages, in a manner consistent with the requirements imposed by, the UPA, the UIPA, and New Mexico common law, Defendants should be required to fully compensate Mr. Thaxton for the

7

injuries and/or actual damages he sustained as a result of the August 26, 2017 incident, via the underinsured benefits ($25,000.00) for which he paid a premium.

## III.    CLASS ACTION ALLEGATIONS AND REQUEST TO CERTIFY CLASS:

46.    Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

47.    Upon information and belief, all underinsured applications and insurance policies issued by the Defendants to New Mexico policyholders are uniform in all respects material to the claims brought herein and differ only in the limits identified in the endorsements included with such policies.

48.    Defendants committed the above-described unfair and/or deceptive practices, omissions of material fact, wrongful failures to provide underinsured coverage (or the full amount of such coverage to which Mr. Thaxton was entitled under applicable law), wrongful denials of claims for underinsured benefits, and/or breaches of the implied covenant of good faith and fair dealing against other policyholders or insureds in New Mexico.

49.    This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who, in the prior six years from the date of filing of this complaint, were a policyholder and/or insured, of a Motor Vehicle Policy issued by Defendants where that policy did not and does not provide underinsured coverage paid for by the policyholder, and sold and solicited by Defendants, due to the application of an offset as set forth in NMSA 66-5-301, otherwise known as the New Mexico offset law or being a "difference state".

50.    Excluded from the Class are all present or former officers and/or directors of Defendants, the "Referees" for purposes of the Evaluation Appeal process set forth below, Class Counsel and their resident relatives, and Defendants' counsel of record and their resident relatives.

8

51.    The proposed class definition is precise, objective, and presently ascertainable, and it is administratively feasible for the Court to easily ascertain whether a particular individual is a member.

52.    Certification of the Class is desirable and proper because there are predominant questions of law and fact in this case which are common to all members of the Class. Such common questions of law and fact include, but are not limited to:

> a. Whether Defendants' acts and practices constitute a breach of Defendants' contractual obligations with respect to their New Mexico policyholders;
>
> b. Whether Defendants' acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;
>
> c. Whether Defendants' acts and practices violate Article 16 of the New Mexico Insurance Code;
>
> d. Whether Defendants' acts and practices constitute failure to state a material fact in connection with the sale of the Defendants' insurance policies;
>
> e. Whether Defendants' acts and practices have deceived or have had a tendency to deceive the Defendants' policyholders;
>
> f. Whether Defendants' acts and practices have been misleading or deceptive;
>
> g. The content, interpretation, and legal effect of Defendants' standard application forms and other standard form documents, in so far as they relate to the acts and practices set forth above;
>
> h. The remedies available to Mr. Thaxton and to Defendants' other New Mexico policyholders or insureds, should it be determined that Defendants' acts and practices have violated their duties to New Mexico policyholders or insureds;

                     i.    The legal and/or factual applicability of affirmative defenses that may be alleged by Defendants.

53.    Certification of the Class is desirable and proper because Mr. Thaxton's claims are typical of the claims of the members of the Class Mr. Thaxton seeks to represent. Without limitation, Mr. Thaxton's claims that Defendants' alleged acts and practices are in breach of the common law and statutory duties alleged above are typical of the claims of the members of the Class.

54.    Certification of the Class is desirable and proper because Mr. Thaxton will fairly and adequately protect the interests of the Class he seeks to represent. There are no conflicts of interest between Mr. Thaxton and those of other members of the putative Class, and Mr. Thaxton is cognizant of his duties and responsibilities to the putative Class. Mr. Thaxton's attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

55.    Certification of the Class is desirable and proper because the members of the Class are so numerous that joinder of all members of the Class is impracticable.

56.    This action should proceed as a class action under Rule l-023(B)(1) NMRA because the prosecution of separate actions by the individual members of the Class would create a risk of:

                  a.   inconsistent or varying adjudications with respect to individual members or would establish incompatible standards of conduct for them and/or Defendants; or

                  b.   adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

10

57.    This action should also proceed as a class action under Rule 1 -023(B)(2) NMRA, because Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the Class. Mr. Thaxton seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendants from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Mr. Thaxton and the Class under New Mexico law.

58.    This action should also proceed as a class action under Rule 1-023(B)(3) NMRA. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

       a. Common or generalized proof will predominate with respect to the essential elements of the claims at issue.

       b. The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

       c. No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if any such member or members wish to do so, they may exclude themselves from the Class upon the receipt of notice under Rule 1-023(C)(2) NMRA.

       d. Upon information and belief, there are no pending lawsuits by members of the Plaintiff Class who may be similarly situated and which may potentially affect the matters raised in this action.

11

e.  It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the Class in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between Defendants and Defendants' policyholders and insureds within the Class described by Mr. Thaxton herein.

f.  The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through numerous separate actions.

59.    Mr. Thaxton seeks to certify a class pursuant to the Class Actions provisions of 1-023 NMRA, under New Mexico law, and based on the facts and allegations set forth herein.

## IV.    ALLEGATIONS AND CLAIMS:

### COUNT I:
#### NEGLIGENCE

60.    Mr. Thaxton incorporates by reference the preceding paragraphs as if they were fully stated herein.

61.    Defendants had a duty to ensure Mr. Thaxton and other members of the class would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory underinsured coverage.

62.    It was reasonably foreseeable that the underinsured coverage sold to Mr. Thaxton and other members of the class was, in large part, illusory and that Defendants materially misrepresented the terms of underinsured coverage.

12

63.     A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and would not materially mispresent the terms of underinsured coverage.

64.     Defendants' actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

65.     As a result of Defendants' negligence, Mr. Thaxton and the Class, sustained actual damages for which Defendants are liable. Mr. Thaxton and the Class are entitled to punitive damages for actions of Defendants which were willful, reckless and wanton, and in bad faith.

## COUNT II:
### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

66.     Mr. Thaxton incorporates by reference the preceding paragraphs as if they were fully stated herein.

67.     There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

13

(7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;

( 15) stating that a transaction involves rights, remedies or obligations that it does not involve;

(17) failure to deliver the quality or quantity of goods or services contracted for;

E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

68.     Defendants failed to deliver the quality or quantity of services applied for and purchased by Mr. Thaxton and other insureds by failing to provide insurance applications and policies containing sufficient information to fully inform a reasonably prudent person charged with the task of purchasing underinsured insurance, to which Mr. Thaxton was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendants.

69.     Defendants, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

14

70.    Defendants' practices as described herein have resulted in actual damages, trebled, to Mr. Thaxton and the Class in an amount to be proven at trial, plus costs and reasonable attorney fees.

**COUNT III:**
**VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT**

71.    Mr. Thaxton re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

72.    There was in effect at all times material a State statute commonly known in the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA").

73.    Pursuant to N.M.S.A.1978, §§ 59A–16–30, the UIPA provides a right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

74.    Mr. Thaxton was insured under the policy issued and adjusted by Defendants.

75.    Defendants owed Mr. Thaxton the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

76.    In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendants failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of its insured (Mr. Thaxton) the same consideration it gave its own interests.

77.    Defendants' failure to pay anything on Mr. Thaxton's underinsured motorist claims was unfounded, unreasonable, and in bad faith.

78.    Defendants misrepresented the terms of the policy sold and provided to Mr. Thaxton and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in

15

the sale and provision of insurance; and failed to follow Defendants' own customary practices and procedures.

79.    Defendants' acts and failures to act were in reckless disregard of Mr. Thaxton's and other insureds' rights as an insured under the subject policy.

80.    Defendants' acts and practices took advantage of the lack of knowledge and experience of Mr. Thaxton and other insureds to a grossly unfair degree.

81.    Defendants failed to abide by its statutory duties under the UIPA, and such violations are negligence per se.

82.    Defendants misrepresented to its insured, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

83.    Defendants failed to acknowledge and act reasonably and promptly upon communications with respect to claims from its insureds arising under the policy, in violation of NMSA § 59A-16-20(B).

84.    Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of its insured's claims arising under the policy, in violation of NMSA § 59A-16-20(C).

85.    Defendants failed to properly affirm and pay the coverage for claims of its insured within a reasonable period of time after proof of loss requirements under the policy was completed and submitted by Mr. Thaxton, in violation of NMSA § 59A-16-20(D).

86.    Defendants did not attempt in good faith to effectuate prompt, fair and equitable settlement of Mr. Thaxton's claims in which liability has become reasonably clear, in violation of NMSA § 59A-16-20(E).

16

87.    Defendants compelled Mr. Thaxton to institute litigation to recover amounts due under the policies by offering substantially less (i.e. nothing) than the amounts claimed by Mr. Thaxton and that will ultimately be recovered in actions brought by Mr. Thaxton, in violation of NMSA § 59A-16-20(G).

88.    Defendants failed to promptly provide Mr. Thaxton with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of his claims, in violation of NMSA § 59A-16-20(N).

89.    Defendants' failure to act in good faith and Defendants' violations of the UIPA are proximate causes of damages sustained by Mr. Thaxton.

90.    Defendants' conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Mr. Thaxton's rights.

91.    Mr. Thaxton and other members of the Class are entitled to attorneys' fees and costs pursuant to §59A-16-30. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating the UIPA, as set forth above, Mr. Thaxton and other members of the Class have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## COUNT IV:
### BREACH OF CONTRACT AND CLAIM FOR DEFENDANTS MOTORIST COVERAGE

91.    Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

17

92.     By issuing the policy in question to Mr. Thaxton, Defendants entered into a contract with Mr. Thaxton and entered into the same contractual obligations with each member of the Class Mr. Thaxton seeks to represent.

93.     By undertaking the acts described above, Defendants have wrongfully and unlawfully failed to provide underinsured coverage and/or denied underinsured claims for benefits to Mr. Thaxton and other members of the Class.

94.     By engaging in the conduct alleged herein, Defendants breached their contractual obligations to Mr. Thaxton and to the Class.

95.     Pursuant to New Mexico law, and because of Defendants' breaches of their contractual obligations to Mr. Thaxton and to the Class, Mr. Thaxton and other members of the Class are entitled to actual damages, including but not limited to, underinsured coverage in an amount equal to liability limits and may be entitled to payment of underinsured benefits, or payment of additional underinsured benefits accordingly and to damage to Mr. Thaxton and the Class in an amount to be proven at trial.

## COUNT V:
### BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

96.     Mr. Thaxton re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

97.     By issuing the policies to Mr. Thaxton and the Class, Defendants entered into contracts with Mr. Thaxton and the Class.

98.     Defendants failed to perform their obligations under those contracts.

99.     Implicit in the contract of insurance between Mr. Thaxton and Defendants was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Mr. Thaxton, and pay Mr. Thaxton compensation for damages under his policy.

18

100.    Defendants breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

    a.  Failing and refusing to acknowledge that the subject occurrence triggers the subject insurance policy;

    b.  Failing and refusing to disclose, admit and acknowledge coverage in this matter;

    c.  Failing and refusing to promptly and fairly investigate, process, determine and decide Mr. Thaxton's claims under the policy referenced above;

    d.  Denying coverage to its insured, Mr. Thaxton, under the policy;

    e.  Failing and refusing to cover its insured, Mr. Thaxton, under the underinsured motorist portion of the policy referenced above; and

    f.  Failing and refusing to mediate, resolve, and settle the Mr. Thaxton's underinsured motorist claims.

101.    As a direct and proximate result Defendants' acts and omissions alleged herein, Mr. Thaxton has suffered damages in an amount to be proven at trial.

102.    Defendants' acts and omissions alleged herein and breach in the implied covenant of good faith and fair dealings were done intentionally, willfully, wantonly, grossly, maliciously and/or with reckless disregard for the rights of Mr. Thaxton. Accordingly, Mr. Thaxton and the Class are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish Defendants for their misconduct and to deter others from similar conduct in the future.

## COUNT VI:
### INJUNCTIVE RELIEF

103.    Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

104.    Mr. Thaxton and the Class are entitled to injunctive relief requiring that Defendants be enjoined from continuing practices that violate the duties, contractual, and legal obligations owed to Mr. Thaxton and the Class.

105.    Defendants must be compelled to stop its practice of failing to provide underinsured coverage benefits equal to the limits of liability coverage where they have failed to fully inform their insureds throughout the application and policy underwriting process.

## COUNT VII:
### DECLARATORY JUDGMENT

106.    Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

107.    An actual controversy exists between the Parties thereby rendering declaratory relief proper pursuant to FRCP 57 and 28 U.S.C. 2201, the Declaratory Judgment Act.

108.    Mr. Thaxton and the Class are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

## COUNT VIII:
### PUNITIVE DAMAGES

109.    Mr. Thaxton incorporates by reference the preceding paragraphs as though they were stated fully herein.

109.    Defendants' conduct in failing to provide its insureds with underinsured policy benefits in an amount sold and solicited was willful, wanton, and in reckless disregard of Mr. Thaxton's rights and the rights of the Class.

20

WHEREFORE, Mr. Thaxton on his own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against Defendants as follows:

A.     Certifying this action as a class action pursuant to Rule l-023(A) & (B) NMRA;

B.     Awarding compensatory damages to Mr. Thaxton and the Class for the damages done to them by Defendants in an amount to be proven at trial;

C.     Awarding punitive damages to Mr. Thaxton and the Class in an amount sufficient to punish Defendants for their willful and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.     Awarding Mr. Thaxton and the Class damages from Defendants as a result of their violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

E.     Awarding treble damages in accordance with the UPA which will deter Defendants and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth in this Complaint;

F.     Granting a declaratory judgment that establishes the rights and obligations of the Parties with respect to the claims set forth herein;

G.     Granting injunctive relief as may be deemed proper by the Court to require Defendants to desist in the wrongful actions described herein;

H.     Awarding Mr. Thaxton and the Class their costs and expenses incurred in this action, including reasonable attorneys' fees, experts' fees, and costs; and

I.     Granting such other and further relief as the Court deems just and proper.

21

## **JURY DEMAND**

Plaintiff Michael Thaxton hereby demands trial by jury on all issues so triable.

Respectfully submitted,

WILL FERGUSON AND ASSOCIATES

By:

ADRIAN O. VEGA
CORINNE L. HOLT
1720 Louisiana Boulevard, N.E., Suite, 100
Albuquerque, New Mexico 87106
Phone: (505) 243-5566
Fax: (505) 245-5699

22



Tel: 1-800-841-3000

**GEICO ADVANTAGE INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

# Declarations Page

This is a description of your coverage.
Please retain for your records.

## Policy Number: 4478-64-53-61
## Coverage Period:
08-23-17 through 02-23-18
12:01 a.m. local time at the address of the named insured.

Date Issued: July 20, 2017

MICHAEL A THAXTON
10743 SKY WATCHER ST NW
ALBUQUERQUE NM 87114-5860

Email Address: mike26az@aol.com

| **Named Insured** | | **Additional Drivers** | |
|---|---|---|---|
| Michael A Thaxton | | None | |

| **Vehicle** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2010 Ford   Edge SEL | 2FMDK3JC4ABB75191 | Albuquerque NM 87114 | |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** |
|---|---|---|
| **Bodily Injury Liability** | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $68.51 |
| Property Damage Liability | $25,000 | $222.36 |
| **Uninsured Motorists Bodily Injury** | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $26.30 |
| Property Damage | $25,000 | $20.54 |
| Comprehensive | $500 Ded | $41.90 |
| Collision | $500 Ded | $121.80 |
| Emergency Road Service | Full | $10.52 |
| Rental Reimbursement | $50 Per Day | $29.66 |
| | $1500 Max | - |
| **Total Six Month Premium** | | **$541.59** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

T-T
DEC_PAGE (03-14)  (Page 1 of 2)

*0000014478645361300720077771*



EXHIBIT
1

Continued on Back
Renewal Policy Page 5 of 30

**Discounts**

| The total value of your discounts is | $162.99 |
|---|---|
| Anti-Theft | $4.49 |
| Multiline | $11.95 |
| Good Driver | $86.66 |
| Persistency | $53.48 |
| Anti-Lock Brake | $6.41 |

**The following discounts have also been applied**

| | |
|---|---|
| Driving Experience | Included |
| Financial Responsibility | Included |

**Contract Type:** A30NM
**Contract Amendments:** ALL VEHICLES - A30NM A54ED1 A54NM

**Unit Endorsements:**    A115 (VEH 1); A431 (VEH 1)

---

### Important Policy Information

-We welcome you to our GEICO family in the Auto Voluntary B20 rate program.

-Please review the front and/or back of this page for your coverage and discount information.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-You have the right to receive a detailed written explanation of the reasons for any change to your renewal policy premium.

-Please call our toll free number 1-800-841-3000 and provide us with the LIENHOLDERS name and address for your 2010 FORD.

---

DEC_PAGE (03-14)  (Page 2 of 2)                                    Renewal Policy Page 6 of 30

 **GEICO Advantage Insurance Company**

geico.com

RECEIVED NOV 2 7 2017

Attn: Region V Claims, PO Box 509105
San Diego, CA 92150-9930

11/15/2017

Will Ferguson & Associates
To Whom It May Concern
1720 Louisiana Blvd Ne STE 100
Albuquerque, NM 87110-7069

Company Name:     Geico Advantage Insurance Company
Claim Number:     058852713-0101-019
Loss Date:        Saturday, August 26, 2017
Policyholder:     Michael Thaxton
Your Client       Michael Thaxton

To Whom It May Concern,

This letter is to follow up regarding the UIM claim for your client, Michael Thaxton. We have
confirmed that the tort carrier does not have any coverage issues, and that Mr. Thaxton's
policy covered a single vehicle with no stacking. His UM/UIM limits were $25,000 at the time
of the loss, and therefore, there will be no UIM exposure. Please contact me at the number
below with any questions or concerns. I will be closing the UIM claim at this time, but it
can reopened in the future if any additional information needs to be reviewed.

Thank you.

Sincerely,

Nicole Scott
972-789-2126
Claims Department

EC0020 (1/2007)



**EXHIBIT**